IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL REYES and | : | CIVIL ACTION |
| GERALD LEONARDI | : | |
| v. | : | |
| TERMAC CORP. and | : | |
| LEO STESLOW | : | NO.  11-5124 |

# MEMORANDUM AND ORDER

ELIZABETH T. HEY, M.J.                                                                                  August 15, 2012

      Defendants Termac Corp. and Leo Steslow have filed a motion for partial summary judgment, seeking judgment in their favor on the claim of Plaintiff Angel Reyes that he was terminated in violation of public policy (Count III of the Amended Complaint).[1]  See Doc. 12.  Mr. Reyes filed a response and Defendants filed a reply.  See Docs. 15 & 20.  I held oral argument on July 9, 2012, and the parties filed supplemental letters following the hearing.  See Docs. 22 Exh A, 23.

---

[1] Defendants have also filed a motion to dismiss the same count of the Amended Complaint.  Originally, Plaintiffs filed two separate actions (Civil Actions 11-5124 and 12-1135).  When Plaintiffs attempted to amend the complaint filed in Civil Action 11-5124, it was mistakenly filed on the 12-1135 docket.  On June 12, 2012, after the actions were referred to me upon the consent of the parties, I consolidated the two cases.  See Doc. 18.  Resolution of the summary judgment motion renders the motion to dismiss moot.

I.     **FACTS**[2]

According to the Amended Complaint, Mr. Reyes began working for Termac in 2007 as a driver delivering materials and machinery to customers. See C.A. 12-1135 Doc. 3 ¶¶ 12, 14. Throughout his employment, Termac would dump industrial chemicals into the Philadelphia sewage system in violation of law, and Mr. Reyes complained about the propriety of this dumping in late February 2011 and on April 4, 2011. Id. ¶¶ 24-25, 38. Also, sometime after March 14, 2011, at the request of his pulmonary specialist in relation to swelling in his lymph nodes, Plaintiff asked Termac for the material safety data sheets ("MSDS") of the products to which he was exposed while working for Termac. Id. ¶¶ 32, 34. Defendants failed to provide the MSDS's to Mr. Reyes. Id. ¶ 33. Mr. Reyes again requested the MSDS's on April 4, 2011, to no avail. Id. ¶ 36. On April 8, 2011, Defendants fired Mr. Reyes allegedly for engaging in a verbal confrontation with a driver off site on April 6, 2011. Id. ¶ 39. Mr. Reyes claims in Count III that Defendants terminated him in violation of Pennsylvania's public policy for complaining about the industrial chemical disposal and his requests for the MSDS's. Id. ¶¶ 52-55.

---

[2] Mr. Reyes and co-plaintiff Gerald Leonardi raise additional claims, but I will confine myself to the facts relating to Mr. Reyes' claim of termination in violation of public policy.

## II.     STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).  The evidence presented must be viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

**III.    DISCUSSION**

    A.    **Failure to Properly Plead**

Defendants' first challenge to Count III is that it does not identify any specific statute or regulation of the Commonwealth to establish a public policy that was violated by Reyes' termination. Instead, the Amended Complaint merely alleges that Reyes' discharge was motivated by his complaints about his employer's disposal of chemical waste into the public sewers and his request for the MSDS's regarding the chemicals to which Reyes was exposed. See C.A. 12-1135 Doc. 3 ¶¶ 52-54. Plaintiff identifies the public policy at issue in his response to Defendants' motion for summary judgment, alleging that his termination was in violation of the Clean Streams Law ("CSL") (referring to the disposal of chemical waste) and the Pennsylvania Worker and Community Right-to-Know Act ("PWCRA") and federal Occupational Safety and Health Act ("OSHA") (referring to the requests for the MSDS's).  Thus, the initial question is whether Count III should be judged alone or in light of the additional allegations in Plaintiff's brief.

The Honorable Gene E.K. Pratter addressed a similar attack on a similarly worded complaint in Wetherhold v. Radioshack, 339 F. Supp.2d 670 (E.D. Pa. 2004), where the defendants argued that the pleading was insufficient to state a cause of action. After reviewing the liberal pleading requirements, Judge Pratter concluded that Wetherhold had sufficiently stated his claim.

4

> [A]lthough Wetherhold has certainly been brief in his explanation of the public policy he claims have been violated, his pleading states unequivocally that his termination was a violation of public policy of the Commonwealth of Pennsylvania. Therefore, he is not relying on "a sole reference to a violation of federal law."

Id. at 678 (quoting McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 289 n.12 (Pa. 2000)). Guided by Judge Pratter's discussion and conclusion, I find that Plaintiffs have sufficiently plead a claim for termination in violation of public policy. Here, the operative allegation in the Amended Complaint is as follows:

> Due to the unusually suggestive timing between Plaintiff Reyes' requests and his termination (four days), he avers his termination was motivated in substantial part by said complaint and/or request and was in violation of the public policy of Pennsylvania.

C.A. 12-1135 Doc. 3 ¶ 55. Like the plaintiff in Wetherhold, although Plaintiff did not cite the governing Pennsylvania law in his complaint, he clearly alleged that it is contrary to Pennsylvania public policy to terminate an employee for complaining about his employer's disposal of chemical waste and asking about the chemicals to which he was exposed at work. Therefore, I reject Defendants' first challenge to Count III.

      B.    **Legal Landscape - At-Will Employment Under Pennsylvania Law**

Defendants' more significant challenge is that Pennsylvania, as an "at-will" employment state, does not recognize a cause of action for the public policy violation Mr. Reyes alleges. Under Pennsylvania law, an employer may terminate an employee for any reason or no reason unless the parties are bound by a contract. Shick v. Shirey, 716 A.2d

1231, 1233 (Pa. 1998). However, under a narrow exception to this rule, an employee may bring a cause of action for termination if such termination would violate "a clear mandate of public policy" of the Commonwealth. McLaughlin, 750 A.2d at 286. As the Pennsylvania Supreme Court has explained, "where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge. Geary v. U. S. Steel Corp., 456 Pa. 171, 184-85, 319 A.2d 174, 180 (1974). "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" Tanay v. Encore Healthcare, LLC, 810 F. Supp.2d 734, 737 (E.D. Pa. 2011) (quoting Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. 1996)). Application of the public policy exception to the at-will employment doctrine has been limited to situations in which an employer "(1) requires an employee to commit a crime[,] (2) prevents an employee from complying with a statutorily imposed duty [,] and (3) discharges an employee when specifically prohibited from doing so by statute." Id. at 738 (citing inter alia, Spierling v. First Am. Home Health Servs., Inc., 737 A.2d 1250, 1252 (Pa. Super. 1999)). The Pennsylvania Supreme Court has emphasized that the public policy exception to the at will employment doctrine is not to be liberally construed. McLaughlin, 750 A.2d at 287 ("the presumption [of at-will employment] is an extremely

strong one [and a]n employee will be entitled to bring a cause of action . . . only in the most limited of circumstances where the termination implicates a clear mandate of public policy of the Commonwealth").

In this case, as previously mentioned, Mr. Reyes claims that his termination was in violation of the public policies enunciated in the CSL and PWCRA.  I will address these separately.

### C.	Clean Streams Law

Plaintiff alleges that Defendants dumped industrial chemicals into the Philadelphia sewage system and that his complaints about the propriety of such disposal resulted in his termination, in violation of the public policy enunciated in the CSL.  See C.A. 12-1135 Doc. 3 ¶¶ 24-25, 38, 52, 54-55.  Defendants counter that the Philadelphia sewage system is not protected by the CSL.  See Doc. 20 at 4.

According to the CSL,

> [t]he discharge of sewage or industrial waste or any substance into the waters of this Commonwealth, which causes or contributes to pollution as herein defined or creates a danger of such pollution is hereby declared not to be a reasonable or natural use of such waters, to be against public policy and to be a public nuisance.

35 P.S. § 691.3.  "Waters of Commonwealth" are defined as:

> any and all rivers, streams, creeks, rivulets, impoundments, ditches, water courses, storm sewers, lakes, dammed water, ponds, springs and all other bodies or channels of conveyance of surface and underground water, or parts thereof, whether

>
> natural or artificial, within the boundaries of this Commonwealth.

Id. § 691.1.  Although there does not appear to be applicable caselaw construing this definition, it clearly refers to natural bodies of water and to pathways that lead to such bodies of water.  It thereby excludes waste water treatment facilities and pathways that lead to such facilities.

Defendants argue that Plaintiff has failed to produce any evidence that Defendants dumped anything into the "waters of the Commonwealth."  In his deposition, Mr. Reyes testified that he and several other drivers dumped chemicals into the sinks in the warehouse.  See Reyes' Dep. at 148-49.  He explained that they would empty buckets of chemicals into the sink drains and clean the buckets so they could be recycled and used again.  Id. at 149.  The problem with the Plaintiff's argument, as the Defendants point out, is that there is no evidence that the warehouse sinks feed into the waters of the Commonwealth.  Thus, even assuming that the CSL reflects the clear public policy of the Commonwealth, Plaintiff is unable to establish a violation of that policy.

At oral argument, Plaintiff's counsel argued that Philadelphia's sewer system is a combined system, channeling both storm water and sewage, such that when there is a storm surge, waste in the sewer system is carried into the waters of the Commonwealth.  Counsel offered no evidence for this proposition, instead citing United States v. Union Corp., 277 F. Supp.2d 478, 484 (E.D. Pa. 2003).  That case discussed the history of the design of Philadelphia's sewer system from the 1800's through the late 1950's as a

backdrop to the environmental claims at issue.³  Plaintiff's citation to <u>Union Corp.</u> is not a substitute for evidence, and that case's historical discussion of the workings of Philadelphia's sewer system is not sufficient for the court to take judicial notice as plaintiff suggests.  <u>See</u> F.R.E. 201(b) (court may judicially notice fact that is not subject to reasonable dispute).  Furthermore, even assuming that the area where the Termac warehouse is located is part of a combined waste sewer/storm sewer system, without evidence that chemicals from the Termac drains actually entered the storm sewer system, Plaintiff has failed to establish any violation of the CSL.⁴

Additionally, to the extent Plaintiffs allege that Mr. Reyes' termination falls into the public policy exception to the at-will employment doctrine because he complained to his employer about the alleged illegal dumping, Defendants argue that such complaints are not sufficient to establish a termination in violation of public policy under the CSL because he complained only internally to his supervisors at Termac.

After reviewing the caselaw, I agree with Defendants.  A violation of public policy can also be established when an employee is terminated for making a complaint to a Commonwealth agency.  In <u>McLaughlin</u>, the Pennsylvania Supreme Court explained that

---

³The property in question in <u>Union Corp.</u> was in the vicinity of the Termac warehouse.

⁴Defendants also urge that the chemicals in question are not industrial waste as Plaintiffs' allege, but rather dish detergents and household cleaning products in larger containers – soaps and cleaners that are rinsed down household drains everyday.  Because I find no evidence that the fluids washed down Termac's sinks were whisked into the waters of the Commonwealth, I need not resolve that dispute.

a complaint to a Commonwealth agency "implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency and undermines the statutory obligation of the employer and employee, which a Pennsylvania statute governs." 750 A.2d at 287. The cases establish that generally complaining to one's superiors, rather than reporting a public policy issue to a state agency, is insufficient to support a claim of termination in violation of public policy. See Geary, 319 A.2d at 175 (plaintiff complained to supervisors of unsafe product); McLaughlin, 750 A.2d at 287-89 (internal complaint referencing OSHA did not implicate Pennsylvania public policy).

Internal complaints may be sufficient when state law imposes an obligation to report upon the employee. In Tanay, a nursing home administrator had complained of safety concerns to the management of his nursing home. 810 F. Supp. 2d at 740. The Honorable R. Barclay Surrick explained that the internal complaints were sufficient to support the wrongful termination claim because, unlike other cases (also cited by Defendants in this case), the administrator of a nursing home had a statutory obligation to ensure the health and safety of the residents. Id. at 740-41 (distinguishing Spierling, 737 A.2d 1250 (Professional Nursing Law did not impose duty to report Medicare fraud); Diberardinis-Mason v. Super Fresh, Inc., 94 F. Supp.2d 626, 629 (E.D. Pa. 2000) (Pharmacy Act did not impose duty to report illegal activity)). Here, Reyes was neither under a statutory obligation to report to a state agency, nor did he make a report to a state

agency. Thus, Defendants are entitled to judgment on Count III to the extent Plaintiffs' public policy argument rests on an alleged violation of the CSL.[5]

### D. Pennsylvania Worker and Community Right-to-Know Act

Plaintiff also claims that he was terminated in retaliation for attempting to exercise his right to receive information about chemicals to which he was exposed, as protected by the PWCRA and OSHA. In short, he alleges that after doctors found swelling in his lymph nodes, he sought the MSDS's so his doctors could rule out chemical exposure as the cause, but his requests were denied and he was terminated. See C.A. 12-1135 Doc. 3 ¶¶ 30-34.

As previously noted, the public policy exception requires a clear statement by the Commonwealth of its policy. "To justify the application of the public policy exception to the at-will employment doctrine, the employee must point to a clear public policy articulated in the constitution, statutes, regulations, or judicial decisions directly applicable to the facts in the case." Davenport v. Reed, 785 A.2d 1058, 1063 (Pa. Cmwlth. 2001). "[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." McLaughlin, 750 A.2d at 288 (quoting Shick, 716 A.2d at 1237). The Pennsylvania Supreme Court has cautioned that it is not the province of the court declare the public policy of the Commonwealth.

---

[5] Plaintiff does not assert that his termination was itself a violation of the terms of the CSL.

> In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. . . . Rather, it is for the legislature to formulate the public policies of the Commonwealth.  The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. . . .  Only in the clearest of cases may a court make public policy the basis of its decision. . . .  To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature.

Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (internal quotation marks and citations omitted).

Reviewing the caselaw and the statute, I conclude that the PWCRA does enunciate a clear public policy of the Commonwealth.  The PWCRA imposes certain obligations on suppliers of chemicals and hazardous substances, and also on employers with respect to labeling and disclosure of such substances, including the maintenance of MSDS's.  See 35 P.S. §§ 7301-7320.  The statute's preamble reflects the public policy considerations giving rise to the legislature's action:

> It is hereby declared that there exists within the Commonwealth of Pennsylvania a potential danger to employees, their families and to the general public from exposure to chemicals introduced into the workplace and into the general environment. . . .  It is therefore declared to be the policy of the Commonwealth that employers within the Commonwealth and chemical suppliers doing business within the Commonwealth have a duty to make available to employees and to the general public the identity of chemicals used in the workplace, and to make information available as

> to the known or suspected health hazards posed by the use of or exposure to hazardous substances.

35 P.S. § 7301 (preamble to Act 1984 Oct. 5, P.L. 734, No. 159). The public policy underlying the PWCRA is also reflected in state court decisions:

> The overall purpose of the Act is to protect employees from the dangers that can occur from exposure to hazardous chemicals used in the workplace or transported and disposed within the community, and to make current information available as to the known or suspected hazards posed by the use of or exposure to such hazardous substances. This is achieved by imposing on employers and chemical suppliers certain obligations and by making available to employees the identify of chemicals used in the workplace.

Heffran v. Dept. of Labor and Ind., 863 A.2d 1260, 1262 (Pa. Commw. Ct. 2004).

In Wetherhold, Judge Pratter concluded that the plaintiff's complaints regarding a hazardous substance in the workplace "alleged an implication of public policy of the Commonwealth as this court reads that policy in the PWCRA," and specifically found that the PWCRA "clearly implicates and defines the public policy of the Commonwealth." 339 F. Supp.2d at 681. The Honorable Terrence McVerry also found that the PWCRA expressed public policy. Lambert v. Envtl. Restoration Group, Inc., No. 07-1573, 2008 WL 723328, at *2-3 (W.D. Pa. Mar. 14, 2008). I concur with Judges Pratter and McVerry that the PWCRA reflects the public policy of the Commonwealth.

Having concluded that the PWCRA enunciates the public policy of the Commonwealth, the question is whether Plaintiff has presented evidence that he was terminated in violation of that public policy within the meaning of the at-will employment

exception. The PWCRA requires employers to maintain MSDS's for each hazardous substance in the workplace, and to provide them to an employee upon request. 35 P.S. §§ 7304(b)(3), 7305(c), (d). The PWCRA also prohibits the discharge of an employee for requesting MSDS information. Id. § 7313(a) ("No employer shall discharge or cause to be discharged . . . an employee because the employee has . . . requested any information . . . or has exercised any right afforded pursuant to the provision of this act.").

Based on Mr. Reyes' deposition testimony, I conclude that Plaintiff has presented evidence to support the claim.[6] Mr. Reyes testified that he asked Leo Steslow and Sean O'Reilly, his superiors at Termac, for the MSDS's in mid-March, and repeated this request a handful of times, including on the day of his termination, but that the MSDS's were never provided. Reyes' Dep. at 117-19. Mr. Reyes explained that although the MSDS's were contained in a book, he asked for copies of the sheets because he could not take the book, but received nothing in response. Reyes' Dep. at 117-18. The undisputed fact is that Mr. Reyes was terminated on April 8, 2011. The temporal proximity between

---

[6] In their supplemental pleading, Defendants also argue that Mr. Reyes' failure to comply with the PWCRA's requirement that the request for the MSDS's be in writing requires judgment in their favor. Although section 7305(d) refers to specific procedures that must follow a written request, section 7305(c) does not require a written request for the production of the MSDS's. More importantly, section 7313 prohibits the discharge of an employee for requesting information, including the MSDS's, under section 7305.

Mr. Reyes' requests for the MSDS and his termination certainly gives rise to an inference of causation. It will be for a jury to determine the reason for Mr. Reyes' termination.[7]

Defendants also focus on the fact that Mr. Reyes failed to make any external complaint to an agency of the Commonwealth.[8] This argument implicates the concern that allowing Mr. Reyes' complaint to proceed will stretch the narrow confines of the public policy exception to the at-will employment doctrine. I am guided primarily by two cases in this consideration. In McLaughlin, the Pennsylvania Supreme Court held that a bald reference to an OSHA violation to the employer was insufficient to overcome the strong presumption of at-will employment. 750 A.2d at 289. However, in their decision, the court was careful to point out that they had "not been presented with any issue of public policy arising from a Pennsylvania statute governing Health and Safety." Id. at 286. In Wetherhold, where plaintiff alleged he was terminated after making a report to OSHA in violation of the PWCRA, Judge Pratter found that the plaintiff had established a violation of the public policy of the Commonwealth. 339 F. Supp.2d at 681-82.

This case lies between the two. Mr. Reyes has done more than allege the possible violation of a federal statute, as in McLaughlin, but has not filed any complaint with an

---

[7]To the extent Defendants argue that Mr. Reyes' employment was terminated for a reason completely unrelated to his requests for the MSDS, I find no reason to address this argument on summary judgment.

[8]Defendants specifically addressed this portion of their argument to the CSL argument. In the interests of thoroughness, I address that issue with regard to the PWCRA.

outside agency, as was done in Wetherhold. However, guided by the caselaw and Judge Pratter's discussion in Wetherhold, I conclude that Mr. Reyes has alleged a violation of public policy with his reference to a direct violation of the PWCRA.

The primary reason for this conclusion derives from the statutory language of the PWCRA, which does not require the filing of a complaint with an outside agency to be afforded protection. Although the PWCRA protects the employee from termination or discipline for filing a complaint, as was the case in Wetherhold, it also protects the employee from termination or discipline for engaging in other activities, including requesting the MSDS's.

> No employer shall discharge or cause to be discharged, or otherwise discipline or in any manner discriminate against, an employee because the employee has filed a complaint, has assisted the department with respect to an inspection under section 14, has instituted or caused to be instituted any proceeding under or related to this act, has testified or is about to testify in any proceeding, has requested any information or properly refused work under [35 P.S. § 7305] or has exercised any right afforded pursuant to the provisions of this act.

35 P.S. § 7313(a) (emphasis added). In this case, the PWCRA establishes that termination of an employee for requesting MSDS's violates the public policy of the Commonwealth, without any requirement that a complaint be made beyond the request made to the employer. Therefore, this case falls within the public policy exception because Mr. Reyes was terminated when the employer was expressly prohibited from doing so by statute. See Tanay, 810 F. Supp.2d at 738 (public policy exception applies

16

when employer "discharges an employee when specifically prohibited from doing so by statute").

The second reason supporting my conclusion is that, although a complaint to a Commonwealth agency "implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency," McLaughlin, 750 A.2d at 287, there is no strict requirement in the caselaw that a complaint be submitted to a state or federal agency to find a public policy violation sufficient to support a cause of action for wrongful termination. Rather, the cases teach that when a violation of the policy of the Commonwealth has already been established, no complaint need be made. For example, in Reuther v. Fowler & Williams, Inc., 386 A.2d 119, 120 (Pa. Super. 1978), the Pennsylvania Superior Court, recognizing the importance of jury duty, found that "the law of this Commonwealth recognizes a cause of action for damages resulting when an employee is discharged for having performed his obligation of jury service." Similarly, in Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363, 1366 (3d Cir. 1979), the Third Circuit held that "Pennsylvania's anti-polygraph statute embodies a recognized facet of public policy of the type proscribed by the Pennsylvania courts." Thus, a cause of action existed if Perk was terminated for his refusal to take a polygraph. Id. Finally, although not addressing the public policy exception to the at-will employment doctrine, the Superior Court found it was a violation of the Pennsylvania Constitution to deny public employment to an applicant on the basis of a criminal conviction for which he had been

pardoned when the subject of the conviction was not reasonably related to his fitness to perform the job. Hunter v. Port Authority of Allegheny Cty., 419 A.2d 631 (Pa. Super. 1980). In none of these cases was any complaint filed with any Commonwealth or other agency. Rather, the violation of public policy was sufficient to provide the basis for wrongful termination claim.

One of the concerns raised by defendants in their post-argument submission was that Mr. Reyes failed to avail himself of the remedies provided for by the PWCRA. See Doc. 23 at 3. Thus, defendants argue that he circumvented the PWCRA, itself. However, the statute did not require him to seek remedy under the PWCRA. "Any person who believes there is a violation by an employer or supplier of this act . . . may file a complaint within 180 days of the violation, with the [Department of Labor]." 35 P.S. § 7314(a). "A straightforward reading of . . . the statute demonstrates that the filing of a complaint with the Commonwealth is not required, but merely available as an avenue of redress." Wetherhold, 339 F. Supp.2d at 682.[9]

---

[9] Unlike the language utilized in the PWCRA, the language of the Pennsylvania Human Relations Act ("PHRA") has been found to establish the exclusive remedy for harassment and discrimination in the workplace. Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 919 (Pa. 1989). There, the state legislature recognized the civil right to be free from harassment and discrimination "which shall be enforceable as set forth in [the PHRA]." 43 P.S. § 953. "The use by the legislature of the word 'shall,' as opposed to 'may,' expresses an intent to make administrative procedures under the PHRA a mandatory rather than discretionary means of enforcing the right created thereby." Clay, 559 A.2d at 919.

Viewing the evidence presented at the summary judgment stage in favor of Mr. Reyes, Defendants are not entitled to summary judgment on Count III of the Amended Complaint to the extent the wrongful discharge claim rests on the PWCRA. Issues of material fact remain regarding the reason for Mr. Reyes' termination.

## IV. CONCLUSION

In Count III of the Amended Complaint, Plaintiffs allege that Mr. Reyes' employment was terminated in violation of the public policy of Pennsylvania. Although Plaintiffs did not cite the specific statutes which contain these policies in the complaint, read with their response to the summary judgment motion, I conclude they have adequately pled the claim.

To the extent his claim rests on violation of the CSL or complaints regarding such violations, I conclude that summary judgment is warranted because the Plaintiffs have produced no evidence to establish that any chemicals disposed of by Termac entered "the waters of the Commonwealth."

To the extent the termination against public policy claim is based on Mr. Reyes' requests for MSDS pursuant to the PWCRA, Plaintiffs' claim survives summary judgment because the PWCRA enunciates the public policy of the Commonwealth and the evidence, viewed in Plaintiffs' favor, is sufficient to establish a violation and issues of material fact surrounding the reason for Mr. Reyes' termination remain.

An appropriate Order follows.